May it please the Court. My name is Jeff Markowitz. I represent the appellant, CRC Industries, Incorporated. The judgment on appeal is unprecedented in two significant ways. First, it holds a manufacturer liable for criminal misuse of one of its products that is entirely unrelated to the product's intended purpose. Second, it does so when there was no alternative feasible design that the manufacturer could have chosen to make the product safer. That's a conceded fact of this case. And the manufacturer adequately warned. That means that the only way this manufacturer could have avoided this multimillion-dollar judgment is to not have sold the product at all, based on the possibility of criminal misuse. No jurisdiction goes this far with products liability. No commentator suggests that it should. And affirming sets Minnesota law on those uncharted course, untethered, and this is important. Any follow-up, no way it could have sold, say that again? There are, if there was no alternative design that it could have used, it adequately warned. So the only way it avoids liability here is if it had not sold this product in the first place. Isn't that what the Minnesota Supreme Court allowed, though? And I'm going to mispronounce the name, the Calio case, or however you want to pronounce it. That's what the district court thought here, right? The district court, in fact, went further than Calio. I want to distinguish those. The district court said there are three options, alternative design, too unsafe for the market, and I'll say unreasonably dangerous in abstraction. That was Judge Schultz's description in caps when it talked about there's no third option. What the Supreme Court in Minnesota did is, by footnote, similar to other courts around the country, it added a dictum, afterthought. Generally, alternative design, you need it. We could imagine conceivably the rare case where you wouldn't if the product is too dangerous for the market. It was not dealing with that case. It has never dealt with that case. No court in any jurisdiction recognizes that sort of case. And the only example the restatement reporters could imagine when they looked at Calio and all of the other courts that imagined maybe we need this alternative option, it imagined that exploding novelty cigar, which explodes in a gift recipient space by design, something so worthless and dangerous that it objectively was unreasonably dangerous. By concession, at trial, that is not this product. This product is perfectly safe when used for its intended purpose. My plan is to focus on foreseeability first. Whiteford directs that the court focuses on the specific danger that caused the injury and ask whether that danger was objectively reasonable to expect. The specific danger was a person deliberately criminally misusing this product contrary to its adequate warnings by huffing it while driving. This record is devoid of much evidence of this ever happening, even if you accept that everything in the ACE blog is something that CRC knew or should have known. We dispute it, but let's take it at face value. We have 375 car crashes over the course of a 17-year period. We know nearly nothing about the underlying data, but let's take that at face value. Contrast that with 20 million aerosol dust removal products sold by 22 manufacturers per year and multiply that 20 million by 17. When you start comparing these two, you start to see a strikingly small percent of .301% where the specific danger injured anyone. And moreover, and this is the last piece I wanted to get to in the introduction because it is so important, Minnesota has an objective standard here, two in fact, that outline the parameters of product's liability and this case blows past both of them on the foreseeability side and the design defect side. It cannot be that you could say it was objectively reasonable to expect this criminal conduct when we don't even say the same thing about guns, products that have a violent intended purpose. And one thing I really do want to stress here is a case that from this court, from Lindholm cited in our opening brief, reinforced by a reply not addressed by a pally. That was under South Dakota law where this court predicted that South Dakota would follow the heating presumption, comment J of the second restatement on torts. And as said, because of the warning, given this presumption, the misuse of a jack, which was not criminal, was not foreseeable as a matter of law. And here we have a jury finding that this warning on the product was adequate. And so the question is, in light of that finding, that established unchallenged reality, this criminal, entirely foreign misuse was foreseeable. And there's just nothing in the record to support that. We have the Selisker testimony, which is layperson usage of the word foresee. This is objectively, this is conceivably possible. All I've heard is you think the jury got it wrong. What is the evidentiary basis for the finding? This is the wrong court to ask that. Will we look, let's take the deferential standard of review, bring it all on. We have three pieces of evidence from which the jury could have found foreseeability. And I, in fact, I don't really even care to spend too much time there. I do think this, I emphasize this point. So there is some. Was the jury misinstructed? It absolutely was. So is that your argument, that the court should have told them something else? That is a backup argument. We should not get there. This is judgment as a matter of law territory, but I will go there right now. This instruction misled the jury. It was technically accurate, but it omitted critical information that misled the jury and focused the jury in an unfair way, contrary to this court's decision in Kelly. It gave the jury half the law. That it said that the- What's your best Minnesota jury, what's your best jury case on that, with that theory? It was technically accurate, but it misled them. Certainly. I have the standards in our reply. I know the standard. Your best case- Your Wagner from this court. When a Wagner from this court, an advocate came before this court and argued to this court that alternative design evidence was not required, and this court ruled that it was a bit misleading to tell that, say that, given what Collio says about the rail case and that is the only alternative. If it's a bit misleading for a lawyer to say that to this court, it's absolutely a bit misleading to tell a jury this. And under this court's decision in Kelly, I don't have on-point case law where this happened with a jury, but Wagner's that, this unduly focused what plaintiff's counsel called his number one point in closing argument. This said ignore the absence of alternative design evidence, even though Collio reaffirms up and down that this is ordinarily required evidence, that it is certainly relevant to determining whether a product is unreasonably dangerous. If we agree with you and Judge Schiltz on your interpretation of Collio, I mean, do the jury, what do we do? I mean, you suggest we vacate the judgment, I guess, at that point. I mean, in other words, does your jury instruction argument matter at that point? Do they rise and fall together? The vacation would- You're asking us to reverse the denial of the judgment of a matter of law, right? Yes, Your Honor. And is that linked to your jury instruction? Because that would be a new trial, right? No, no, it's no separate. It's a backup. First, the jury is a backup. The jury is a backup, yes, Your Honor. And so, I'm on foreseeability. Let's go to design defect, because this is really, really important. We are, advocates will talk about, oh, Pandora's box, oh, slippery slopes. That is where we are. We are looking down- Did the district court give a justification for this being the non-ordinary case for this- Juries get to decide is what it boils down to. The jury heard the evidence. It can weigh risks and benefits of a product. If that is the state of the law, that means that juries get to be referendum forums to bypass policymakers without any of the objective limits that we normally require. And we have three ways that normally a plaintiff would come and improve their design defect claim. There are two. Arguably, there's maybe a third. One is you do what everyone else usually does. And what everyone in Minnesota history who has recovered has done. You point to an alternative, feasible, safer design. Not done here strategically. Not done. To avoid giving this jury an alternative design instruction. Second, maybe you do what the restatement reporters imagined. You say, this product is so manifestly dangerous, so manifestly unreasonable by design, it jumps off the page. We can say objectively, that manufacturer made an unreasonably dangerous choice. And the last one is maybe, maybe, you give this jury an expert who says, yes, I see all that, no alternative design, no manifest danger. At least show somehow why the standard of care in 2019 could possibly have meant that this manufacturer had a duty to recall the product based on tort law, when it was perfectly safe, had an adequate warning, and there was no alternative design. That was not done. They sidelined the product safety expert as a pretrial judgment in order to avoid the testimony of defendants, product safety experts, who testified without rebuttal. This case intersects two areas of law, and it would be significant in either one. It's not just that it imposes liability for criminal misuse, unrelated, it's that it does so without any objective tether to how this product could be objectively said under Bellota to be unreasonably dangerous. Even if we go past this point, we get to the new trial argument, which I've already summarized, which a new trial would be required, consistent with Wagner and the other case less cited. The proximate cause arguments overlap substantially. I'll rest on the briefing for those, unless there's other questions. This Court jumped to proximate cause in Ashley County, which I trust your Court the Court has looked at. This is, that is the Pandora's box that we're facing here. The several liability limit issue, GLAE, has not yet been decided by the Minnesota Supreme Court. It perhaps could be any day. I'll argue that issue directly. We have three arguments there, and they all really relate. First, the district court's rationale is contrary to the statute. Second, the finding that Neumiller was an intentional tortfeasor is really outlandish and cannot be supported by the record. Neumiller calls what drunk driving, reckless driving, or negligent driving, the notion that an intoxicated driver could be judged to be committing intentional murder, which is what this verdict is, is outlandish. And three, this goes to the last point, the jury was told something that juries are never told. This was, they had to decide a fact-intensive question on intent, and they were told what's behind the curtain. They were told that as long as they find this empty chair tortfeasor committed an intentional tort, substantially certain he'd kill someone, then the manufacturer could get hit with all of the damages. And so it doesn't have to wrestle anymore. This instruction was the answer to the jury's question. That gets to a question that I think is very significant. Do any of your theories, would any of your theories permit the appellee to get 22%? Yes, Your Honor. If CRC is liable, but you accept any of the first two of those three arguments that we present on the law and on the intent piece, they get 22.5%. The third one will require a new trial on the intent issue. I see my time is running low. You've got so many arguments. You just said, I know you were just talking three, but I can't keep your arguments straight. I'll try again. First on the statute. How would, what could we do to reverse the judgment and leave, either by remand or preferably not, just leave the shares? Reverse, so you would affirm on CRC liability, don't, but you could, and then you would agree with us on the statute. The statute does not support the argument that Neumiller's fault could not be compared with CRC's fault, or you could agree with us on the intent issue. The jury's finding that Neumiller was substantially certain he'd killed someone that day cannot be supported by the evidence, even with all ordinary deference. That's either one would result to that, lead to that result. I'll reserve the remainder of my time for rebuttal. I appreciate the Court's time. Thank you, and may it please the Court. Jonathan Taylor for the Plaintiff Appellee, David McDougall. The vast majority of the arguments that you've heard so far this morning, as you noted, Judge Loken, and certainly the primary thrust of my friend on the other side's briefing in this case, consists of arguments that were made to and rejected by the jury in this case. That's true with respect to foreseeability, issue number one, which goes to duty and proximate cause. But foreseeability wasn't clearly instructed. I don't take them to be making No, I don't think that, there is, if you go to, I think this is Well, under Minnesota law, for close cases, it is a jury question, and that just means to the extent that reasonable jurors could come to a different conclusion. It would be more complicated than just close. Well, I would agree that the Minnesota That was all I had instructed. Yeah, if you look to page 57 of the appendix, under the heading Manufacturer's Duty, that includes a pretty lengthy paragraph on foreseeability. And the last sentence of that paragraph says, it is not enough for an injury to have been within the realm of any conceivable possibility, which is effectively the argument that my friend is making that the jury disregarded that instruction. And I don't take my friend to be making an argument about instructional error as to this element, as to foreseeability. I take my friend's primary instructional error argument to go to the feasibility of an alternative design. And I'm happy to talk about that later, but if I could, just kind of back up and go in  I was a bit struck by my friend beginning with foreseeability and challenging the jury's finding on foreseeability in this case because Is it consistent with the brief? It is consistent with the brief. Do I need to surprise you this morning? Well, I would have you, I mean, you know the standard. I don't need to repeat it. Complete absence of probative facts. And I think what is particularly unusual about this case, if you go to the closing argument that the defense counsel made to the jury, went through a lot of the elements, did not mention foreseeability, made no argument on foreseeability, apparently felt, had such little confidence in his argument that he didn't even want to waste time talking about it. And now it's point, heading number one in their brief is that the jury's foreseeability finding was based on a complete absence of probative facts. And in fact, I would go further. Their argument in the closing was not we couldn't have possibly foreseen this happening or this kind of criminal misuse occurring or even a car accident occurring. It was rather we were aware of this, we were on it, we were doing everything we could to address the problem. We tried a bit of it, we made the warnings clear. Everybody knew about this and we were working hard to combat it. That's a fair defense to make. It's pretty incompatible with the idea that the jury erred, dramatically so, in finding foreseeability. And so that gets to what I think is the heart of the matter, their argument about breach and defect. And their first argument is that the district judge in this case committed instructional error that requires a new trial because he's included a sentence saying that a reasonable, feasible alternative design is not required, which is a correct statement of Minnesota law. Why wouldn't it be required in a situation like this where you're dealing with a product that, when used for the purpose for which it is put on the market, is not disputedly unsafe? I mean, it does exactly what it's supposed to do. It's this misuse of the product and the foreseeability of that and the potential for that that the warning was supposed to address or some alternative design. How shouldn't this be the perfect kind of case where there ought to be some evidence showing they knew they needed to do something else and here were things they could have done? Well, I think this is precisely because, as you note, Judge Smith, the problem here was one of intentional, foreseeable misuse of the product. You know, warnings aren't going to, you know, if somebody is addicted to huffing, warnings are not going to deter them. And it's a bit different than your typical... But what could they have done, literally, besides not sell it? Well, and what we said, and this was our argument below and the argument that the jury, I think, credited and it submitted a note saying this, is that given how significant the public health risks are that are associated with this product, how widespread they are, all the devastation that they cause, how deadly the DFE is, and given on the other end of the scale how the product has pretty marginal utility. It's a precision duster that is maybe marginally more effective of other modes of lifting dust off of a computer keyboard. Is all that in the record? It is in the record. I'm happy to talk about it if you want particular citations, but... It's probably not your description of how basically worthless it was or how absolutely off the charts the risks were. Well, the jury was properly instructed on the factors, and I think my friends... Yeah, I'm just... I'm taking your... Your description was what you hoped the jury would buy. Well, but again, if you read the record and make every inference in favor of the verdict... It's been on the market for decades. The Consumer Product Safety Commission does not think it's hazardous, does not... Not so hazardous as to require some kind of regular warning. I mean, you are making it up, frankly. And they made that argument to the jury, and the jury was... Fine, but, you know... And their argument of just on the instructional error point is that the reason why there was clear and prejudicial abuse of discretion, which is the standard for, you know, ordering a new trial for an instructional error, is that the judge didn't instruct the jury that this was a factor they could consider, and that's just incorrect. So if you look at page 59 of the appendix, the ninth factor that the jury could consider as part of this reasonable risk utility balancing analysis that the jury undertook is the manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility. That is... Well, counsel, what's the limiting factor for the use of precedent like this for other manufacturers and the obligation to foresee criminal misuse? Well, I think it's going to be a pretty extraordinary case like this, and I think the Minnesota Supreme Court... What makes this extraordinary? Well, you have a product that, again, it's how stark the imbalance is between the utility of the product on the one hand and the dangers and risks associated with the product on the other. I mean, this is, there's a video... The product should be taken off the market is the takeaway from the jury verdict. The jury's verdict is very clear, and it's submitted a note on this, is that more needs to be done than is currently being done to curb this intentional foreseeable misuse of the product. Isn't that the alternate design? I mean, the jury says more should be done, but what? No, I... What should be done? If I could try to translate what the jury did here. It's saying the status quo is unacceptable, it's unreasonably dangerous, and defective. And it's up to you as the manufacturer. If you think you could... Wasn't the burden on you to show the evidence of what could be done? The burden is on us to show that under the factors, under these nine factors as they're spelled out in the instructions, the risk utility analysis is such that the product is unreasonably dangerous and defective. That's the instruction. The jury made a finding on that. And they're asking you to disturb that finding as, you know, under one of the most deferential standards in the civil justice system. It's a theoretical issue that your colleague was pointing to, right? I mean, we don't know what the alternate design might be, but there must be one out there. But that's not required. And, in fact, the jury can come to the determination. One of the district judges would disagree with you, right? There's a district judge that thought that under the best reading of CALIO is that it either requires that there be evidence of a feasible, reasonable alternative design, or that it be so unreasonable as to require taking it off the market or absorbing the cost that would otherwise be absorbed by the Cindy McDougals of the world. And we went along those lines. Maybe we didn't hold that in Wagner, didn't we? I think in Wagner, what this Court said is it's misleading. If you just take the statement that a feasible alternative design is not required in the abstract, and don't consider it alongside the factors, then it's a bit misleading. Did they say don't consider it along those factors? No, no, no. I think in that case you were just describing counsel's argument that it's not required without discussing the balancing test under Minnesota law. And so what you said in that case is it's misleading. There's actually a balancing test. The balancing test requires the jury to consider these factors. And as a practical matter, and this is what the Court said in Calio, it will generally be the case that plaintiffs, in order to prevail in these cases, are going to have to put on some proof of an, just as an empirical matter. What makes this the extraordinarily misleading case? I would say two things. One is it's not a case about foreseeable use of a product and something sort of the product being used as intended and something going wrong. It's about foreseeable misuse of the product. And I think that makes it in a different category. And then number two, it's the stark imbalance between, on the one hand, the tremendous public health risk, and I can rattle all the evidence in the record, you know, rattle off all the pieces of the evidence in the record that supports that. And then on the other hand, the marginal social utility of a precision duster that is maybe a little more convenient and more effective than a feather duster or a vacuum. What should have been done was they should have had a system to make sure that Newmiller couldn't have bought that product. Well, and to, on that point, Judge Loken, now the Minnesota legislature has actually passed legislation that has made it more difficult, much more difficult for manufacturers to sell this product and for people to buy this product. And that legislation went into effect earlier this year. Is it sort of like our gun control legislation? Well, it's legislation that it doesn't outright ban the sale of the product, but it puts it behind the shelf. You've got to be at least 21. You can't buy a certain number in bulk. You can't get it sent to you. Does it apply to manufacturers or retailers? I think it would apply primarily at the point of sale, so probably the retailers. But my point is that just to... That's what I'm getting at. I mean, you know, the problem here was who bought it. No, I think there's... And that universe of buyers, you're arguing or the jury thought was foreseeable based on no statistics whatsoever. Well, I think it's... There's a lot of evidence in the record that they knew of the risks here and that it was foreseeable that people were... I mean, tens of thousands of people a month abuse, you know, dusters. And it's the... All right. Give me a record site for they knew that addicts would misuse it while driving. While driving? So there is... It's in the corporate representative. If you go to... I think it's pages 601 to 603 of the transcript. So we could foresee that if someone misused the product and got high and drove, they could crash and, of course, kill someone. And then I... That leads to a question. Yes. And then I would also... There's a testimony in the record showing that the blog that compiled hundreds of accidents involving this duster, that that was tracked and followed and read by the executives of CRC. And so I just don't think... This is why they didn't make the argument in their closing. How many incidents in the... How many new millers in that blog? Well, that... I mean, that blog doesn't even purport to be exhaustive, but it just gives you a flavor of how... Is the answer none, as I think it is? Oh, I think everyone... I think in all of those car accidents, it's because the person used, intended to misuse, this duster product. I mean, they all used it to get an instantly debilitating high. I mean, it takes you unconscious. How many have indicated that the misuser of the product intended to kill? Well, that's a separate... That's a separate issue. That doesn't go to the state of mind of CRC. That goes to the state of mind of New Miller for the intentional tort piece. That also is not an argument that they're cleaning instructional air so they have to surmount the, you know, the complete, you know, lack of probative evidence. And on that piece, I would just say, you know, we point out a few pieces of evidence that are particularly critical on that. The jury submitted a note saying, what does substantial certainty mean? And they were told to use their collective judgment. They were taking their task... They went about their task seriously. They relied on the fact that the duster is... It's extremely intoxicating, debilitating. The amount that New Miller had and his own recent history of passing out while driving and crashing into things to say that these facts taken together when he's intentionally doing this give rise to a substantial certainty. And there's Minnesota Supreme Court case law showing that in an analogous circumstance of someone having unprotected sex with someone else while they know that they have herpes, that even if they don't intend to give herpes to somebody else, they know that they are undertaking something that has a sufficiently strong possibility of happening that that constitutes an intentional tort. And the court in that case found that as a matter of law. Can you cite, please? Yes. So that case is called R.W. v. T.F. And we cited it in our brief, if you give me... If you bear with me a bit. All right. Yeah, yeah. And that's a case where the court decided that as a matter of law. And all we're saying is this was a jury question. It could go either way, and they can't show a complete lack of evidence in support. And if I could just, in 10 seconds, close on the statutory issue. The Minnesota Supreme Court has never applied the comparative fault principles or the comparative fault statutes to cases involving an intentional tort. I would submit to you that this court, as a diversity court, not be the first to do that. You can go to a case like Swisher. Is that issue pending now? It is. And so that was going to be the second. I think because this is an important issue that could affect a great many cases, and it's a question of Minnesota law, and the court, the Supreme Court, has a case before it that was heard, I think in March, and no, as of last night, there was not an opinion. It might be prudent for this court to wait and see what the court in that case does with it. If there are no further questions. Two points, one on foreseeability, one on design defect. Foreseeability. Multiple courts, including this one in Ashley County, have recognized that what the subjective eye can foresee and what is it aware of is not the measure of foreseeability. Ashley County, quote, this court concluded that the distance between cold medicine manufacturing and meth sales and damages from it was not the measure of foreseeability. It was too remote for proximate cause, quote, even if the defendants were aware of previous instances in which fertilizer products were used in... I'm sorry. Even if manufacturers knew that cooks purchased their products to use in manufacturing methamphetamine. Salisco did not testify he was aware of any such instances. He testified that he did not know whether any prior instances of huffing while driving had ever occurred. Secondly, um, on follow this trail, my time's about to run out, I have one brief point. The limiting principle. Follow that question as you're contemplating what to do here and if you follow it, you're going to see there is no limiting principle. Ant and Rote Spray, we cited in our facts section, 89% DFE. Is it next? And what about something that has 50%? 20%. The reason these questions are hard is that there is no objective standard in sight. Minnesota has those standards. We're citing them. Belota intended for this, Minnesota Supreme Court and Belota, intended for the reasonable care test to be objective. When we don't have that objective comparator, the alternative design, and we don't have that jumps off the page dangerous, exploding gift cigar, we are in policy land and that's what this verdict is. This jury delivered a subjective policy determination that the product is not worth it. There is no factual basis to get there under the objective test. Thank you. Thank you, Your Honors. I appreciate your time. Case is well brief. Arguments been helpful. We'll take it under advisement. A lot of issues here and of course our diversity obligations make it even more complicated.